IN THE MATTER OF THE PETITION OF CLOVER CABLE SYS-TEMS, INC., FOR A CERTIFICATE OF APPROVAL TO CON-STRUCT, OPERATE AND MAINTAIN A CABLE TELEVISION SYSTEM IN THE TOWNSHIP OF UPPER DEERFIELD, CUM-BERLAND COUNTY.

Superior Court of New Jersey
Appellate Division

Submitted January 8, 1985—Decided February 11, 1985.

Before Judges MICHELS, PETRELLA and BAIME.

*Holzapfel, Perkins & Kelly,* attorneys for appellant Clover Cable Systems, Inc. (*Patricia F. Hernandez,* on the brief).

*Irwin I. Kimmelman,* Attorney General of New Jersey, attorney for respondent Board of Public Utilities (*Andrea M. Silkowitz,* Deputy Attorney General, of counsel; *Raymond C. Barzey,* Deputy Attorney General, on the brief).

*Kirsten, Friedman & Cherin,* attorneys for respondent Cablentertainment of New Jersey-V (*Dennis C. Linken* and *John K. Enright,* on the brief).

*Keron D. Chance,* attorney for respondent Upper Deerfield Township, submitted a letter indicating the Township would rely on the briefs filed on behalf of Cablentertainment of New Jersey-V and the Board of Public Utilities.

PER CURIAM.

Clover Cable Systems, Inc. appeals from an order of the Board of Public Utilities, Office of Cable Television (Board), dismissing its petition for a certificate of approval to construct, operate and maintain a cable television system in Upper Deerfield Township, Cumberland County, New Jersey. The basis for the appeal is Clover's contention that the Board was re-

quired to conduct a plenary hearing before ruling on its application because there were disputed questions of fact.

Clover holds certificates of approval to operate in three Cumberland County municipalities, *i.e.*, Commercial, Downe and Maurice River Townships. In July 1982 it filed for municipal consent to operate in Upper Deerfield Township which is not contiguous to the municipalities for which it already has approvals. Two other companies also filed applications with that township. Hearings were held by the township and it then gave its consent to Group W Cable, Inc. (Group W), one of appellant's competitors. Shortly thereafter, Group W sold its television systems to respondent Cablentertainment of New Jersey-V (Cablentertainment) which had joined in the consent application with Group W.[1]

Cablentertainment then filed a petition with the Board seeking a certificate of approval to operate in Upper Deerfield.[2] Clover also filed a petition with the Board for certificates of approval to operate in Upper Deerfield and in three other townships in Cumberland County, *i.e.*, Deerfield, Fairfield and Lawrence Townships as part of its "proposed regional system" of "six townships." Deerfield and Fairfield are contiguous to Upper Deerfield while Lawrence Township is not. Clover did not, however, have consents from any of these municipalities. Clover's application to operate in Upper Deerfield was not referred to the Office of Administrative Law as a contested case, but the disputed applications to operate in the other three townships were. The Board reviewed the record, made findings and dismissed Clover's regionalization petition involving Upper Deerfield. On the same day the Board issued a certificate of approval to Cablentertainment for construction and

---

[1]The municipal resolution noted that Group W intended to sell its assets to Cablentertainment.

[2]The petition was initially filed by Group W, but was subsequently amended to reflect ownership by Cablentertainment.

operation of a cable television system in Upper Deerfield Township. Clover filed an appeal with this court to challenge the Board's dismissal of its petition. We denied its application for a stay of construction of cable television facilities in Upper Deerfield in a June 21, 1984 order in which we provided that Cablentertainment "shall proceed with the construction and installation of the television system in the Township of Upper Deerfield at its own risk and peril." We thereafter also denied summary disposition. See *R.* 2:8–3(b).

Clover argues that because there were disputed fact questions the Board erred in refusing to grant a hearing. Clover's petition for its "proposed regional system" set forth the following grounds for approval of certification on a regionalization basis: (1) it already held certificates of approval for three Cumberland County townships (Commercial, Downe and Maurice River Townships—none of which are contiguous to Upper Deerfield); (2) it had completed construction in one of those townships, and expected completion in the other two by October 30, 1983 and January 1984; (3) the award of certificates in "Lawrence, Fairfield, Deerfield and Upper Deerfield to Clover Cable Systems, Inc. *would form* a *contiguous* and cohesive regional network connecting all of the rural communities of Cumberland County" (emphasis supplied); (4) the award would tie together the high schools in the region and "its local origination programming would also provide a vehicle for exchange of ideas and programs among county residents with common interests;" (5) these four townships "would serve as the logical completion of Clover's regional system," and (6) "one cable television company would be both financially and technically in a better position to provide adequate cable television service for residents of the area."

Cablentertainment moved to dismiss Clover's Upper Deerfield petition on the ground that Clover failed to establish a *prima facie* case for a "regionalization" petition, and alternatively sought dismissal on the ground of laches because Clover's petition was not filed until seven months after Cablentertain-

ment's petition was filed and more than a year after the initial resolution of denial by the Upper Deerfield Township governing body. Upper Deerfield Township also opposed Clover's application. Clover filed an answer to Cablentertainment's motion to dismiss taking the position that its petition established a *prima facie* case of regionalization.[3]

The Board did not conduct a hearing on Clover's petition, but dismissed it by order dated March 6, 1984. The Board found that Clover's claim for a certificate of approval on grounds of regionalization was weak, insufficient, self-promoting and contained no solid factual framework. The Board stated that it had considered Clover's petition "in light of six factual issues it applies to petitions based on regionalization." The Board found that the award of the certificate to Cablentertainment would not deter development of adequate cable television service and would not cause an unreasonable duplication of services in the area. See *N.J.S.A.* 48:5A–17b. It also pointed out that Clover did not even have a franchise in a municipality contiguous to Upper Deerfield[4] and that Upper Deerfield strongly objected to the petition. Although it accepted the factual allegations in Clover's petitions, it held that the petition, answers and supplemental papers did not present sufficient proof of disputed facts to justify a plenary hearing.

Clover argues on this appeal that it was entitled to a hearing before its petition was dismissed. As a preliminary matter we note that although the Cable Television Act, *N.J.S.A.* 48:5A–1, *et seq.*, does not expressly provide for a direct application on regionalization grounds, by virtue of Supreme Court

---

[3]Clover relied on the September 30, 1982 decision and order of the Board in *I/M/O Petitions of Home Link Communications of Princeton*, Docket Nos. 816C–6800 and 817C–6806.

[4]Cumberland County communities contiguous to Upper Deerfield are: Deerfield, Fairfield, Bridgeton and Hopewell. Alloway, Upper Pittsgrove and Pittsgrove are also contiguous to Upper Deerfield but are located in Salem County.

construction it has been held that the Board possesses the authority under *N.J.S.A.* 48:5A–17b to determine such applications. *Clear TV Cable Corp. v. Public Utility Comm'rs.*, 85 *N.J.* 30, 45–47 (1981). Hence, if qualified, Clover could apply for certification of approval on regionalization grounds. In *Clear TV Cable Corp.*, the court stated:

> If we are to give effect to regional factors as intended by the Legislature, 17(b) must be broadly construed. Therefore, we hold that the Board must have the power under that section, regardless of the lack of municipal consent, to issue a certificate covering a municipality to a company already operating in a neighboring municipality (whether under 17(a) or 17(f)) and to do so either (i) upon appeal from that municipality's denial of consent (without the restriction of the "arbitrary" standard of section 17(d)), (ii) upon that company's participation as a competitor/objector under section 16(b) to the issuance of the certificate to another company, or (iii) upon direct application to the Board for such regional certification. [85 *N.J.* at 47].

■■ When Clover was denied municipal consent by Upper Deerfield (which awarded such consent to Cablentertainment) it was entitled to appeal that denial under *N.J.S.A.* 48:5A–17d, which authorizes any cable company denied a municipal consent to appeal to the Board on grounds that the municipality's denial was arbitrary. See 85 *N.J.* at 52. Additionally, if Clover had been "already operating in a neighboring municipality" (85 *N.J.* at 47), it would have been entitled to make a direct application to the Board under the principles of *Clear TV Cable Corp.* Clover's previously obtained certificates of approval from the Townships of Downe, Commercial and Maurice Rivers, do not, in our view, constitute the "neighboring areas" (*N.J.S.A.* 48:5A–17b), whether within or adjoining the municipality, or operation in a "neighboring municipality" as contemplated by the Supreme Court's decision in *Clear TV Cable Corp.* Because of the nature of the system proposed, which includes the use of cable, and the installing or laying of lines and "facilities ... in, along, beneath or over highways and other public places" (*N.J.S.A.* 48:5A–22), there is some logic to using a neighboring municipality or area concept which we consider to be equated with a contiguous municipality or area. Each of the townships in which Clover has acquired approval is separated

from Upper Deerfield. Downe Township is separated from Upper Deerfield by Fairfield and Lawrence Township, while Commercial and Maurice River Townships are separated from Upper Deerfield by Millville and Deerfield. As noted, each of Clover's petitions submitted to the Board argued that if it got the approvals in Lawrence, Fairfield, Deerfield and Upper Deerfield it would form a "contiguous and cohesive regional network." Clover was not, however, operating in any contiguous municipality when it submitted its petition. Thus, the Board could not issue a certificate of approval to Clover pursuant to subsection 17b. *Clear TV Cable Corp. v. Public Utility Commr's., supra* (85 *N.J.* at 47).

Clover's essential contention before us is that the Board erred in declining to afford it a hearing. As a general rule, when an application is made for a certificate of authority and the applicant possesses the requisite municipal consent, *N.J. S.A.* 48:5A–16a, 48:5A–17a and b, the certificate may not be denied by the Board without a hearing unless "there are no relevant issues in dispute." *I/M/O Petition of Controlled Cable Corp.*, 95 *N.J.* 473, 474 (1984). Similarly, it may not issue a certificate without a hearing unless there is no "reasonable ground" for complaint. *N.J.S.A.* 48:5A–16b. The present appeal, however, raises a slightly different issue: that is, whether the Board may deny a certificate without a hearing where the application is made directly to the Board for certification under *N.J.S.A.* 48:5A–17b on the basis of regional considerations and without the requisite municipal consents,[5] notwithstanding the provisions of section 22 and subsection 16a of the act. Here, Clover not only had no municipal consent for Upper Deerfield,

---

[5]*N.J.S.A.* 48:5A–22 requires a municipal consent before issuance of a certificate of approval. It may be somewhat anomalous to say that there is any distinct application under subsection 17b because that paragraph of section 17 starts out with the words, "In considering *any such* application ..." and obviously is referring to an application under subsection 17a and the section as a whole.

but also did not have such for its pending contested case applications for Deerfield, Fairfield and Lawrence Townships. Subsection 17b does not specifically address the circumstances under which a hearing is to be conducted. Subsection 17c, however, does state as follows:

No such certificate amended pursuant to subsection b. of this section shall be issued except after hearing of which each affected municipality shall be given notice and afforded opportunity to be heard. No such amended certificate shall be issued which would impair the terms of any existing certificate or of any municipal consent upon which such existing certificate is based, except with the consent of the holder of such existing certificate and of any municipality having issued such municipal consent.

Thus, in the usual circumstances, before issuing a certificate of approval under criteria in subsection 17b which would either exclude certain areas from an application or direct that the area be enlarged, a hearing must be held. Generally, without municipal consent Clover would not have been entitled to a certificate of approval if subsections 17a through c are read as a whole with section 22 of the act. It could have, however, objected as a competitor of Cablentertainment under subsection 16b.

In *I/M/O Petition of Controlled Cable Corp., supra* (95 *N.J.* 473), the City of Jersey City had awarded its municipal consent to Controlled Cable Corporation (Controlled). Upon application by Controlled to the Board for certification, competing applications of other cable companies were filed which relied on language in subsection 17b. The Board, believing that Controlled had violated the requirements of the Cable Television Act by failing to submit certain pivotal information to the municipality and by making untimely amendments to its applications, dismissed Controlled's application without a hearing. The Appellate Division reversed and the Supreme Court affirmed, holding that because there were relevant issues in dispute with respect to both the alleged nondisclosure and untimeliness of the amendments, a hearing was required. *Id.* at 478–484.

In *In re Micro-Cable Communications Corp.*, 176 *N.J.Super.* 197, 204–205 (App.Div.1980), we applied a similar rationale,

but found there that based upon the papers submitted there were no relevant issues. We affirmed the Board's dismissal of the application without a plenary hearing. Thus, a review of the case authority demonstrates that in the instant case the Board was not required to have held a hearing upon Clover's petition pursuant to subsection 17b unless some relevant issue was in dispute. The only issues that could have been put into dispute by the petition, answer and supplemental papers filed by Clover, were whether it had a claim superior to that of Cablentertainment for certification in Upper Deerfield on grounds of regionalization without municipal consent or conditioned on obtaining municipal consent, *N.J.S.A.* 48:5A–22 and *N.J.S.A.* 48:5A–17a, or whether it had a viable appeal under *N.J.S.A.* 48:5A–17d or objection under *N.J.S.A.* 48:5A–16b (which would have been submitted against Cablentertainment's petition).

Even apart from the statutory prerequisite of municipal consent, the record of Clover's submission to the Board discloses only fleeting references to regionalization issues. Clover's application argues that "one cable television company would be both financially and technically in a better position to provide adequate cable television service for residents in the area." The record before the Board in this matter was essentially comprised of self-serving statements and allegations without factual support.

Furthermore, Clover's "regionalization" application was inappropriate because none of the communities wherein it presently operates are contiguous to Upper Deerfield. Of its pending and contested applications, only Deerfield and Fairfield are contiguous to Upper Deerfield and a municipal consent had been issued in those townships to another entity, Cumberland County Cable Co., Inc. By contrast, Cablentertainment had existing certificates of approval from Hopewell and Bridgeton Townships, both of which bordered directly upon Upper Deerfield. Under these circumstances not only could the Board take into account Clover's lack of municipal consent in Upper Deer-

field and any contiguous community, but it was also justified in finding that Clover's petition was without merit on the regionalization basis on the face of its papers. Nor was it a sufficient challenge of the denial to it of municipal consent and the award of municipal consent and approval to Cablentertainment. There was no relevant issue in dispute and no reasonable ground for such complaint.

■ Based on the record before us, applying the appropriate standard of review in such matters, we are satisfied that the action of the Board in denying Clover's application without a plenary hearing was not unreasonable, arbitrary or capricious. *Paterson Publishing Co. v. N.J. Bell Tel. Co.*, 21 *N.J.* 460, 467–468 (1956); *In re Micro-Cable Communications Corp.*, *supra* (176 *N.J.Super.* at 205).

Affirmed.